IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RUTH M. WADE,

    Plaintiff,

vs.                                    CASE NO. 4:06cv425-MP/WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

    This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D). It is recommended that the decision of the Commissioner be reversed and remanded for articulation of findings.

**Procedural status of the case**

    Plaintiff, Ruth M. Wade, applied for disability insurance benefits and supplemental security income benefits. Plaintiff was 60 years old at the time of the administrative hearing, had a three year nursing degree, and had past relevant work as a registered nurse. Her earnings history shows continuous employment from 1966 through 2002. R. 66-67. Plaintiff alleges disability since March 20, 2003, due to

fibromyalgia, chronic fatigue, and inability to grip with her hands.  The Administrative Law Judge found that Plaintiff has the residual functional capacity to do light work and thus could still do her past relevant work as a registered nurse supervisor.  He concluded that she was not disabled as defined by Social Security law.  Plaintiff contends that substantial evidence does not exist to support this finding.  She argues that she should have been found to have only the residual functional capacity to do sedentary work, and that, had that been the finding, the "grids," medical-vocational rule 201.06 would have directed a finding of disability.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which

support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

    4.    Does the individual have any impairments which prevent past relevant work?

    5.    Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Analysis**

    **Testimony**

Plaintiff testified at the administrative hearing that she had been diagnosed with fibromyalgia. R. 194. She said that she stopped working as a registered nurse in 2003 because she had a lot of mental confusion and pain. Id. and R. 195. She said that mental confusion was one of the reasons she stopped working as a nurse. R. 204-205.

Plaintiff testified that she had had problems with her right eardrum, and had some loss of hearing in both ears. R. 201-202.

Plaintiff said that she suffered muscular pain, hurting "all over." R. 195. She said she had pain in the bottoms of her feet, toes, fingers, and in her back across her

shoulders and hips.  *Id*.  She said that the pain was constant.  R. 196.  She said her feet would hurt so bad should could not stand and walk, but then the pain would decrease and, after walking, would not hurt quite so bad.  *Id*.  She said she could not sit for long.  R. 209.  She said that, with medication, the pain was about at five or six on a scale of ten.  R. 202-203.  Plaintiff said that she was careful with her use of pain medication, and did not suffer any side effects from the medications she took.  R. 203.  She said she did not take her prescription pain medication, but did take Aleve[1] "all the time."  R. 206.

Plaintiff said that when she first got up in the morning, she would have pain in her hands and could not close her hands at all.  R. 197.  She said she could close her hand only about half way.  *Id*.  The pain in her hands typically lasted 30 minutes.  R. 198.  She said that later in the day, the pain would recur if she tried to grip something, such as opening a jar.  *Id*.  She said she used the computer "a pretty good bit and that makes my hands hurt."  *Id*.  She said that she could sit at the computer for 30 to 45 minutes, but then she hurt from the sitting and her hands hurt.  R. 210.  She said that she had trouble holding a pen.  R. 198.  Plaintiff said that she had to stop giving injections when she worked as a nurse due to hand problems.  R. 199.

Plaintiff said that she had swelling in her feet and legs "most of the time."  R. 199-200.  She said that medications helped with the swelling.  R. 200.

Plaintiff said that she was able to work around her home until she got tired, and she would rest for awhile.  R. 200.  She found it difficult to clean the bathrooms of her home, or to use the vacuum cleaner because she could not hold onto it.  R. 193, 201.

---

[1] Aleve contains Naproxen, a nonsteroidal anti-inflammatory prescribed for relief of pain and inflammation of joints and muscles.  PHYSICIANS' DESK REFERENCE (2005).

When cooking, Plaintiff said that she had to take breaks and sit down because her hips and feet hurt. R. 201. She said she could not do much cooking, and said her husband did most of that. *Id.* She no longer walks or hikes, though she used to, and does not fish. R. 210. Her husband did the grocery shopping. *Id.*

Plaintiff said that she and her husband had a place at a recreational vehicle (RV) park in Helen, Georgia, and they had an RV, a "park model," that stayed there. R. 207-208. She and her husband went there about three times a year. R. 208. The drive is about five and one-half to six hours, and her husband does the driving. *Id.*

Plaintiff said that she slept only about two hours at a time. R. 197. On the nights she did not take Flexeril,[2] she said she got up three or four times. R. 206. She said it was depressing to hurt all the time, but did not think she was "clinically depressed." R. 204.

Plaintiff was asked whether she could do the work of a medical office receptionist. R. 211. She said she thought she could not do the work of filing, squatting down or getting up and down. *Id.*

Relying upon the record and Plaintiff's testimony, the vocational expert said that her nursing jobs variously required the ability to do light and medium work. R. 218-219. One of the nursing jobs, a supervisory position, was also deemed to be a light duty job because it required a considerable amount of walking and driving. R. 222-226. The Administrative Law Judge did not pose a hypothetical to the vocational expert, however.

---

[2] Flexeril is prescribed as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions. PHYSICIANS' DESK REFERENCE (2004), p. 1985.

R. 216-226.  The only matter as to which the ALJ inquired was the expert's assessment of the exertional levels of the jobs that Plaintiff had previously performed.  *Id.*

**Medical evidence**

Plaintiff was diagnosed at the Mayo Clinic on May 25, 2001, as having myofascial pain and fibromyalgia.  R. 114.  It was said that fibromyalgia is a "chronic condition usually related to poor relaxation of the muscles."  *Id.*  It was thought that Plaintiff would benefit from using muscle relaxants at night, such as Flexeril.  *Id.*  Physical therapy and exercise were also important features of treatment.  *Id.*  It was noted that Plaintiff had degenerative changes of her hands suggestive of osteoarthritis.  R. 115.  Her diagnosis was fibromyalgia, limited flexion of the fingers, and de Quervain's[3] tenosynovitis of the right thumb.  R. 116.  It was noted that Plaintiff's "fine motor coordination is impaired due to the lack of range of motion in her digits."  R. 117.  Plaintiff then needed "moderate assistance with home management activities, including cooking, cleaning, and grocery shopping," and "requires occasional assist[ance] with fine motor manipulation such as buttoning fasteners on her clothes."  R. 117-118.  Plaintiff was instructed on therapeutic exercises and was provided a gripper to assist in opening jars.  R. 118.

Two years later, on May 21, 2003, Stephen J. Miniat, M.D., filled out a disability form.  R. 141.  Dr. Miniat said that due to loss of motion of the joints, Plaintiff was no longer able to take blood pressure, give injections, and could not write or type due to

---

[3] Painful tenosynovitis due to relative narrowness of the common tendon sheath of the abductor pollicis longus and the extensor pollicis brevis.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

pain and limited movement of her hands.  *Id.*  He said that she experiences moderate to severe pain in her feet, hips, hands, and shoulders, limiting her range of motion and activity.  *Id.*  It was further noted that Plaintiff's grip strength was severely lessened due to pain in her hands and limited movement, and he said that Plaintiff could not make a fist.  *Id.*  He said that she had difficulty with buttons and snaps.  *Id.*  He said that Plaintiff limps due to pain in her feet when first starting to walk, and he said that the limp returns if she walks very much.  *Id.*  He said that Plaintiff could squat "momentarily," but could not walk on her toes or heels.  *Id.*

Dr. Miniat's treatment notes, however, are sparse, and he treated her primarily for ear problems, not for fibromyalgia.[4]  R. 163-172.  The only notation concerning Plaintiff's fibromyalgia is dated November 30, 2004, which cryptically provides:

> PROBLEM #2: but after the patient was here she also wanted a refill on her other medications.  The patient has fibromyalgia.  For this she takes Flexeril.  The patient takes 10 mg table every night.  She gently since the soft [sic] and therefore does not follow-up with us at routinely [sic] and she should.  The patient has been health provider business and believe that she is well aware of her currently illness.

R. 165.  Dr. Miniat found that Plaintiff's fibromyalgia was essentially stable.  R. 167.  He determined that she had bilateral serous otitis and controlled hypertension.  *Id.*

On September 2, 2003, Plaintiff was examined on a consultative basis by Owen D. Oksanen, M.D.  R. 142.  Plaintiff said she could not work due to chronic muscle and joint pain.  *Id.*  Plaintiff said that she had moderate aching in the muscles almost

---

[4] While the medical records show a lengthy course of treatment for ear problems, there is no assertion by Plaintiff that her ear problems have caused disability. Therefore, this report and recommendation has not set forth the medical record concerning Plaintiff's ear problems.

everywhere, with point tenderness.  *Id.*  She also had generalized fatigue and minimal confusion.  *Id.*  With respect to Plaintiff's work capability, Dr. Oksanen said:

> Despite this history, no limitation of physical activity, mental status, etc. was seen.  She was able to walk around easily.  She got up and onto + off the exam table by herself.  Full range of motion was noted.  I sought [saw] no indication that she would have trouble was [with] sitting, standing, walking, lifting, carrying, or even handling objects.  Conversation was without difficulty.  She appeared to hear me. . . .

R. 142.  Dr. Oksanen found reduced grip, but with good range of motion and normal strength throughout.  R. 143.  Gait and balance were adequate without an assistive device.  *Id.* and R. 145.  Dr. Oksanen found that Plaintiff had no unusual ideation, agitation, or confusion.  R. 143.  Plaintiff reported that she sewed.  R. 144.  He observed that her cognitive function was appropriate, she had no difficulty with hearing, she was able to ambulate around the office easily, without any apparent limitation, and her grip and fine motor function were good, contrary to her described symptoms.  *Id.*  He found that Plaintiff had full range of motion throughout, strength was 5/5, there was no paravertebral muscle spasm, and her grip and fine motor function were intact.  R. 145.  Dr. Oksanen concluded:

> I cannot quantitate any physical limitations that would interfere with work. I did not recognize any cognitive dysfunction that would interfere either. Subjective symptoms, as described, make assessment here very difficult.

R. 145.

On January 21, 2005, Plaintiff was treated by a chiropractor for pain in her back. R. 175.  She returned for treatment on January 25, 2005.  R. 173.

**Whether the Commissioner's residual functional assessment was deficient**

The Administrative Law Judge determined that Plaintiff retained the residual functional capacity to lift and carry 20 pounds occasionally, and 10 pounds frequently, and to sit, stand, and walk 6 hours in an 8 hour day.  R. 24.  This is a finding that Plaintiff can do light work.  20 C.F.R. §§ 404.1567(b) and 416.967(b).

In his opinion, the ALJ first described the medical evidence.  R. 23.  After finding no impairment meeting a Listing, he said that his next task was to determine Plaintiff's residual functional capacity to perform her past relevant work.  *Id.*  He stated that he "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ."  R. 24.  He then described Plaintiff's testimony, but he did not explain to what extent he accepted Plaintiff's testimony as "consistent with objective medical evidence or other evidence."

Further, he found that Plaintiff had testified that she "recently took a trip *in* an RV (recreational vehicle) 2-3 times *in one month*."  *Id.* (emphasis added).  This was incorrect.  Plaintiff did not say she took a trip *in* a recreational vehicle, or that she did this two or three times a month.  This error may have been of some significance in arriving at the ALJ's residual functional capacity assessment.[5]

---

[5] Two other findings by the ALJ have been faulted by Plaintiff but cause lesser concern.  The ALJ found that Plaintiff uses her computer "daily."  R. 24.  She did not say that, R. 210, but she did say she used it "a pretty good bit and that makes my hands hurt."  R. 198.  Using the computer "a pretty good bit" may reasonably be construed to mean daily or almost daily.  Second, Plaintiff faults the decision for finding that the vocational expert had determined that based upon Plaintiff's residual functional capacity, she could return to her past relevant work.  R. 24.  The vocational expert merely characterized Plaintiff's past relevant work as light work.  See the discussion above.  She did not express the opinion found by the ALJ.  That error, however, is not important as the correlation between a finding of a light work residual functional capacity

The ALJ then noted the assessments made by the state agency physicians, who found Plaintiff to be capable of doing work at a medium level of exertion.  R. 24.  He said that these physicians "provided specific reasons for their opinions . . . ground[ed] in the evidence in this case."  *Id.*  He said he was not persuaded by these opinions because the physicians "did not have the benefit of actually examining the claimant or considering the record in its entirety."  *Id.*  Then, without further explanation of what evidence in the "entire record" he relied upon, the Administrative Law Judge found Plaintiff capable of doing light work.  *Id.*  The ALJ did not mention the weight to be given the opinion of Dr. Miniat and did not try to reconcile Dr. Miniat's opinion with the findings of Dr. Oksanen.

Plaintiff contends that the Administrative Law Judge erred by not providing a narrative discussion showing how the evidence supports his finding as required by Social Security Ruling 96-8p.  That Ruling provides in relevant part:

NARRATIVE DISCUSSION REQUIREMENTS

*The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)*.  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

---

and the exertional demands of Plaintiff's past relevant work is a correlation that the ALJ must make at some point in the decision.  It is not something about which the vocational expert need express an opinion.

Social Security Ruling 96-8p (Emphasis added, footnote omitted).

Defendant argues that when one considers the record as a whole, the ALJ's conclusions are supported by substantial evidence. Defendant contends that the "narrative discussion required by SSR 96-8p, certainly does not proscribe [prescribe] such a rigid decision-writing template." Doc. 17, p. 6. Cited for this is Fischer-Ross v. Barnhart, 431 F.3d 729 (10th Cir. 2005). In that case, the claimant had argued that the failure of the ALJ to set forth a narrative discussion of his reasons for finding no disability at step three of the sequential analysis required a remand. The court rejected this argument, stating that it "would lead to unwarranted remands needlessly prolonging administrative hearings." 431 F.3d at 730. The court reached this conclusion because the fully articulated findings of the ALJ at steps four and five sufficiently explained his conclusion at step three. *Id.*, at 734-735. That is not the case here.

In Spicer v. Barnhart, 64 Fed. Appx. 173 (10th Cir. 2003) (not selected for publication), the Tenth Circuit was confronted with exactly the argument presented to this court, a lack of discussion with respect to the residual functional capacity determination at steps four and five. There the court said:

> We disagree with this contention, which minimizes the duty of the ALJ to make specific and detailed predicate findings and to include a sufficient narrative discussion concerning a claimant's RFC. See SSR 96-8p at 149 (stating that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, must contain a thorough discussion and analysis of the objective medical and other evidence, and must include a discussion of why reported symptom-related functional limitations can or cannot reasonably be accepted as consistent with the medical evidence); *see also Winfrey v. Chater*, 92 F.3d 1017, 1023-24 (10th Cir.1996) (describing the ALJ's responsibilities in assessing RFC under phase one of step four of the Commissioner's process). On the record before us in this case, the fact that the ALJ considered the hearing testimony (indicating osteoarthritis in plaintiff's hands) along with

> his discussion of her various other impairments, does not demonstrate that he specifically considered the limitation to her hands either individually or in combination with her other demonstrated impairments.
>
> While this court has no desire to needlessly constrain ALJs by erecting procedural hurdles that block the ultimate goal of determining disability, we think it is reasonable nonetheless to require that the ALJ's decision be sufficiently articulated so that it is capable of meaningful review. The ALJ's decision in the present case provides this court with no evidence that plaintiff's impairment to her hands was considered along with her fibromyalgia and gastrointestinal problems. The ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir.1996) (holding "[t]he record must demonstrate that the ALJ considered all of the evidence," and, while he needn't discuss every piece of evidence, the ALJ must "discuss[ ] the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects"). When, as here, an ALJ does not provide any explanation for rejecting significant medical evidence, we are "left to speculate what specific evidence led the ALJ to [his conclusion]," *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995), and thus, we cannot meaningfully review the ALJ's determination. *See Clifton*, 79 F.3d at 1009. While there may be substantial evidence from which the ALJ might conclude that plaintiff is not disabled after careful consideration of her additional impairment, "we are not in a position to draw factual conclusions on behalf of the ALJ." *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir.2001) (quotation omitted). We believe that the need for sufficient reasoning is especially acute in this case, where the ALJ has concluded that plaintiff has the capacity to perform work in an occupation that requires extensive use of one's hands.

64 Fed. Appx. at 177-178. Of importance, therefore, in Spicer v. Barnhart was the failure to discuss a combination of impairments, particularly the claimant's potential inability to use her hands. Likewise, interpreting the purpose of Social Security Ruling 96-8p, the Ninth Circuit has said that where there has been a "complete lack of meaningful explanation [for a credibility determination]," the court is left with "nothing with which to assess its legitimacy." Robbins v. Social Security Administration, 466 F.3d 880, (9th Cir. 2006).

While not argued by Plaintiff, the need for a narrative discussion is also required by the rules in this circuit governing the weight to be given a treating physician's opinion and in determining the credibility of a claimant.  The ALJ must clearly articulate the reasons for rejecting a treating physician's opinion, and those reasons must be supported by substantial evidence.  Phillips v. Barnhart, 357 F.3d 1232, 1240-1241(11th Cir. 2004); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).  If Dr. Miniat was not a treating physician, the ALJ should point to substantial evidence in the record upon which that conclusion may be founded.  Likewise, "where proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995), *quoting*, Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983).

The Commissioner seeks to remedy these problems with argument in his memorandum, pointing out evidence in the record which reasonably could have supported the ALJ's decision.  Doc. 17, pp. 3-9.  Given the enormous volume of claims that the Administrative Law Judges must adjudicate, an argument could be made that the Commissioner should be permitted to remedy a faulty administrative decision with more specific argument in district court.  But ultimately that argument must fail.  It is contrary to Social Security Ruling 96-8p and the cases cited above.  Further, it is not sound administrative law policy.  A claimant should be advised of the specific reasons that the a claim fails at each level of review.  When presented with the specific reasons for rejection of a claim, a claimant and counsel may more intelligently make the decision

whether to ask the next level, including this court, for review.  Presumably, if sound reasons are given, weak claims would not be litigated further.

Thus, despite the fact that this court could review the arguments now made by the Commissioner and reach a decision on this claim, it would essentially be doing so *de novo* rather than giving deference to the Administrative Law Judge.  This record contains the usual evidence that might or might not support an award of benefits: testimony from the claimant, a partial residual functional capacity opinion by Dr. Miniat, contrary observations by the consultative examiner, Dr. Oksanen, and evidence that Plaintiff suffers from impairment of her hands (grip and manipulation) and from chronic fatigue.  It would be better to remand the case to allow the Administrative Law Judge to provide a narrative discussion of the evidence explaining his findings.

**Conclusion**

Thus, considering the record as a whole, the court cannot tell if the findings of the Administrative Law Judge are based upon substantial evidence in the record and followed correct legal rules for review.  Accordingly, the decision of the Commissioner should be reversed and remanded for further consideration.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **REVERSED** and **REMANDED** for further consideration consistent with this report and recommendation.

**IN CHAMBERS** at Tallahassee, Florida, on June 22, 2007.


                s/    William C. Sherrill, Jr.
                **WILLIAM C. SHERRILL, JR.**
                **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**